ANNA E. DOOLITTLE, Appellee, v. J. E. DOOLITTLE and J. H. JONES, Executors of the last will and testament of M. B. DOOLITTLE, Deceased, Appellants.

**Marriage and divorce:** APPEAL: DEATH OF APPELLANT. Where the defendant in an action for divorce died pending an appeal from judgment granting to plaintiff a divorce and alimony, and denying defendant's cross petition for divorce, the husband's executors cannot prosecute the appeal from the judgment on the cross-petition.  ·

**Same:** DIVORCE: INHUMAN TREATMENT: ADULTERY: EVIDENCE. In this action for divorce brought by the wife on the ground of cruel and inhuman treatment, to which defendant pleaded in a cross-petition adultery of the wife and asked divorce, the evidence is held sufficient to sustain plaintiff's charge of inhuman treatment, and insufficient to show adultery on the part of plaintiff.

**Same:** ALIMONY. Where a husband was worth approximately $50,000 an award as alimony of practically one-third of that sum, the wife being given the care of the three minor children for whose support she was liable, is upheld.                    .

**Same:** DIVORCE: CONDITIONAL DECREE. In equitable actions the decrees in many cases must be conditional to work out the equities of the parties. Thus the provision in a decree of divorce awarding the wife alimony, that in case she was compelled to pay any part of a judgment that might be obtained in an action then pending against both parties for conspiracy, she might recover such sum from the husband, that his property should be liable therefore as between them, was proper. The trial court, however, had no power to order that in case of the husband's appeal, and only then, he should pay a certain sum each month to the support of the wife during the pendency of the appeal; as jurisdiction after appeal is vested solely in the appellate court.

**Same:** ALLOWANCE OF ATTORNEY FEES. An allowance of $350 by the trial court and $150 in the appellate court as plaintiff's attorneys' fees in an action for divorce, which involved only fact questions, was adequate compensation.

*Appeal from Howard District Court.*—HON. A. N. HOBSON,
Judge.

MONDAY, JUNE 29, 1914.

ACTION for divorce and alimony against M. B. Doolittle,
now deceased. The grounds for the divorce were cruel and
inhuman treatment. Defendant denied generally, and also
filed a cross-petition for a divorce, based upon the ground of
adultery. The trial court granted the prayer of the petition,
dismissed the cross-petition, awarded plaintiff the custody of
the minor children, four in number, gave plaintiff the home-
stead in the town of Cresco, with its furniture and belongings,
awarded her the sum of $15,000, payable in installments, and
conditionally relieved the plaintiff from any judgment which
might be obtained in a pending action against her and her
husband, and allowed her the further sum of $350 for attor-
ney's fees. Defendant appealed to this court, and, after the
appeal was taken, he departed this life; and the executors of
his last will and testament were substituted 'as defendants.—
*Modified* and *Affirmed* and *Remanded* for decree in district
court.

*Reed & Pergler,* for appellants.

*E. A. Church,* for appellee.

DEEMER, J.—Whilst death has passed its irrevocable de-
cree of divorce between the original parties to this action,
the defendant's executors have been substituted and without
objection are prosecuting this appeal because of the effect
of the decree upon the property rights of the heirs, devisees,
and legatees of the original defendant.

No question is made regarding the right of the executors
to prosecute the appeal rather, than the heirs or next of kin;
and but little is said regarding the right of the substituted

defendants to prosecute the appeal without a showing that
the decree is, in some manner, prejudicial to them, or rather to
the estate which they represent.   Upon the latter proposition
there may be some doubt, for, if plaintiff was not entitled to
the decree of divorce entered, she was at the time of her
husband's death his lawful wife and entitled, at her election,
to a one-third in fee of all his real estate, and one-third of
his personal estate, after payment of the debts, absolutely.
Whether this would equal or exceed the amount awarded as
alimony is not shown by the record, although, according to a
claim made in argument for appellee, the husband was pos-
sessed of considerably more property at the time the decree
was entered than the trial court found in fixing the amount
of permanent alimony; and we are asked upon a cross-appeal
to increase the allowance.

In view of the fact that neither side is making any objec-
tion on either score, we have concluded to dispose of the
appeal upon its merits, in so far as it involves property rights,
with the observation that this opinion is not to be taken as a
precedent upon the question of the right of the representa-
tives, if proper objection had been' made, to continue its
prosecution (remarking parenthetically that the executors
must be of opinion that plaintiff would not receive out of her
deceased husband's estate, were she his wife at his death, as
much as the trial court awarded her as alimony, else this
appeal would be frivolous).

It is true, of course, that the executors cannot prosecute
the appeal from the order denying the husband's cross-peti-
tion, for it would be quite impossible for us to now award a
decree of divorce in favor of a dead man.
Such a decree would manifestly be a nullity.
It may be, although that point we do not now
decide, that we may consider the testimony introduced in
support of the cross-petition as a reason for not sustaining the
decree in plaintiff's favor, although adultery was not pleaded
as a defense, on the theory that plaintiff did not come into

1. MARRIAGE AND
DIVORCE: ap-
peal: death of
appellant.

court with clean hands, or, as it is generally expressed in this country, on the doctrine of recrimination. See Nelson's Divorce and Separation, sections 429 to 443, inclusive.

The real question here is one of pleading; but as this is not argued by counsel, and the original defendant pleaded plaintiff's adultery as a cross-petition for divorce, we are disposed to treat the case on the theory that, if plaintiff's adultery is established by the testimony, it will operate as a bar to her right to a divorce, and furnish a reason for reversing the decree as to permanent alimony, although no affirmative relief could be granted on the cross-petition.

We are thus brought down to the only issues which may, on any theory, be considered upon this appeal. They are: First. Was plaintiff, on the testimony adduced on her behalf, entitled to a decree of divorce on the ground of cruel and inhuman treatment? Second. Although entitled to a divorce on that ground, should a decree have been denied her because of having committed adultery, as charged in the cross-petition filed by her husband? Having settled these questions, the third and only other proposition arising is: Assuming her to be entitled to a divorce, was the decree as to alimony, with its incidents concerning the care and control of the children, the ownership of the homestead, and the orders as to attorney's fees, suit, and support money, correct? We shall first consider the testimony relating to the charge of adultery.

Direct testimony from plaintiff's alleged paramour was given to the commission of such an offense, and some circumstances were proved which in a measure tended to confirm the charge. On the other hand, this was expressly and unequivocally denied by the plaintiff, and circumstances in support of this denial were shown. The trial court, after carefully considering all this evidence, found that the charge was not made out, and in effect held that the testimony was manufactured. We are disposed to agree with this conclusion. The main witness for the defendant in his introductory state-

2. SAME: divorce: inhuman treatment: adultery.

ment indicated by a side remark, voluntarily thrown into the case, that his testimony should be received with suspicion, and, as the testimony proceeded, it became evident that some of it, at least, was manufactured for the occasion. The original defendant's connections with this witness were also suspicious, and the attempt in the same connection to besmirch the character of one of plaintiff's daughters was wholly unjustifiable under the circumstances. For these reasons we shall wholly disregard the testimony regarding the charge of adultery, made against plaintiff, except as it has a bearing upon plaintiff's right to a divorce from her husband, in confirmation of like unfounded charges made against the plaintiff and her children in her presence before she began her suit for divorce, thus supporting her charge of cruel and inhuman treatment.

The parties were married December 24, 1890; plaintiff then being seventeen and the original defendant (whom we shall hereafter call the defendant) being fifty-seven. The latter had had a previous matrimonial adventure, and his former wife had been compelled to divorce him on the ground of cruel and inhuman treatment. See *Doolittle v. Doolittle,* 78 Iowa, 691. Plaintiff was a country girl, and defendant pressed his suit with the usual vigor of one who has had experience in that line. He pictured to her a life of ease, of travel, and of pleasure, such as his wealth would afford. With such visions before her, plaintiff, notwithstanding the disparity of their ages, was led into a matrimonial alliance which, in fulfillment, was quite different from what had been promised. We say this now to dispel the thought that plaintiff was in any sense an adventuress, having in mind the early demise of her husband and the acquirement of a large share of his wealth. She doubtless did expect immediate enjoyment from it, but in this he was to share. They immediately moved upon a farm some four miles from Cresco, where they resided until about two years prior to the commencement of this suit, when they moved to Cresco and took up their residence in the property which thus became the homestead of the family and

which was awarded to plaintiff as a part of her alimony. Eight children were born to them, six of whom were living at the time of trial, aged from seven to twenty-one years. The custody of the minor children was awarded to plaintiff, in the decree as finally rendered, and in this connection it should be remarked that the trial court overlooked the fact that one of these children, although a minor, had been married, and his custody should not, under the circumstances, have been awarded to the plaintiff.

Notwithstanding his age, aside from a hernia with which he was troubled, defendant was a vigorous man physically and retained his mentality to the end, although he was then seventy-nine or eighty years of age. He had marked natural ability, although not much schooling. He was a good manager, industrious and thrifty, although always eccentric and peculiar, possessed in large degree of what the Scotch call "dourness," very penurious and suspicious. He concealed his money in out of the way places about his premises, unjustly accused the members of his family with extravagance, and denied them most of the pleasures and some of the necessities of life. Plaintiff labored indoors and out and in every way endeavored to increase their holdings and to add to the prospective, if not the present, pleasures of her children.

Unfortunately a good many contentions arose over money matters. Defendant did not have even the ordinary affection for his children and but little for his wife. Withal he was cruel and hard-hearted, and even when death invaded the threshold his heart was not softened. His conduct with reference to the sickness and death of one of his children was quite sufficient to justify the charge his wife brought against him. He called his daughters indecent and vile names in the presence of their mother, threatened to break the piano on which they were practicing, and alienated the affections of all his children save one, and this one was a child by his first marriage, who never at any time recognized the plaintiff after her marriage. He unjustly accused plaintiff of unfaithfulness to

him, in the presence, not only of his children, but also in the presence of strangers, and during the latter years of his life, both by word and act, accused plaintiff of trying to poison him. He abused and cruelly treated his boys by his second marriage, without any reasonable excuse. Without attempting to recite any of the testimony, we are constrained to hold that the charge of cruelty is well sustained by the testimony. It is true that defendant attempted to explain most, if not all, of the charges made against him, and it is doubtless true that plaintiff was at times to blame. But, in view of the entire record, it is strange that she held her peace as well as she did. In most instances defendant admitted that some of the things charged against him occurred at the very time and place charged, but he sought to minimize the effect thereof by various and sundry explanations, some of which did not explain. His counsel have made an able argument on his behalf, and have done the best they could to explain away the charges, but the burden, as it seems to us, is too great in the face of the record presented.

No authorities need be cited upon the propositions of law involved, as these are plain and well established.

II. As to the alimony. We have already referred to the provisions made in the decree. The award was on the basis that defendant was worth from $40,000 to $50,000, although

3. SAME: alimony. the trial court said that he was satisfied he was worth more than that sum, in visible and tangible property. Much of defendant's property, especially his money, was concealed, and the amount thereof, it seems, no one knew, except as sums were discovered in out of the way places.

Defendant admits that he had real estate at the time of trial amounting to $35,195, and that, counting in his personal property, he did not have to exceed $40,000. In making this estimate, farm lands in this state were put in as low as $20 per acre, the highest at $85. We are inclined to the view that these valuations were entirely too low, and

on the whole record are satisfied that defendant, at the time
of trial, was worth more than $50,000. Plaintiff had nothing,
as all her earnings during her married life went into the
estate of her husband. She was properly given the custody
of three minor children aged seven, thirteen, and fourteen,
respectively, and of necessity was liable for their support.
She was awarded the homestead, valued at $3,000, and given
$15,000 in money, payable in installments. This is the
equivalent of one-third of $54,000. We are satisfied that this
was approximately correct.

The decree also contained the following provisions, which
are complained of:

It is further adjudged that in case plaintiff shall be com-
pelled to pay any part of any judgment or judgments in liti-
gation with one A. T. Jolly, or with the administrator of the
Mrs. A. T. Jolly estate, plaintiff may recover such amount or
amounts from defendant, and that defendant's property be
held therefor as between the parties to this litigation. It is
adjudged by the court that in case of an appeal herein by
defendant, but not otherwise, said defendant pay to the clerk
of this court, for the benefit of plaintiff, $75 each month; the
said payments to be made within five days of the first day of
each month and to continue until litigation is ended. These
payments to be made as temporary alimony for maintenance
of plaintiff and her minor children; and judgment is condition-
ally entered therefor. Execution to issue for collection of said
monthly payments, if not paid as ordered.

As we understand it, the first of these provisions was
made in view of suits pending against plaintiff and her hus-
band by one Jolly, and by the administrator of his wife's

4. SAME: di-
vorce: condi-
tional decree.

estate, for damages growing out of an as-
sault made by defendant's children, Amos and
Mark Doolittle, to which the husband and
wife conspired. The cases, or some of them, were tried at
one time, and a verdict rendered against defendant for the
sum of $6,500. This verdict was set aside and a new trial
granted; and the actions were pending at the time this case

was tried. Although there is a little confusion in the record, we do not understand it is claimed that plaintiff was an active participant in the assault. She was sought to be held as a codefendant or a conspirator jointly or jointly and severally with her husband. There may be some doubt about the liability at law of a husband and wife for conspiracy. See *People v. Miller,* 82 Cal. 107 (22 Pac. 934) ; *State v. Clark,* 9 Houst. (Del.) 536 (33 Atl. 310) ; *Kirtley v. Deck,* 2 Munf. (Va.) 10 (5 Am. Dec. 445). No doubt either may alone conspire with his or her children, but, according to the record here, the conspiracy charged was by husband and wife in aid of their children. Whatever the rule as to liability, it is evident that the trial court was of opinion that the wife should be protected against any judgment which she might be compelled to pay on account of these suits. On the face of the record, we see no valid objection to this provision. The action is still pending, and the liability is contingent. If, in the further progress of that litigation, it should be made to appear that plaintiff alone was held liable, and defendant or his representatives discharged, doubtless a court of equity might and should modify the decree to meet a change of conditions after its rendition. If, on the other hand, both plaintiff and her husband's estate should be held liable, there would seem to be no necessity for now changing the decree.

The presumption in the first place is that no conspiracy could be committed by husband and wife, and in the second, if plaintiff were led into the matter by her husband, even if she could otherwise be held liable by reason of a conspiracy with her children, it will be presumed that she acted on the coercion of her husband, and *prima facie* she would not be liable. Bishop's Crim. Law (8th Ed.) sections 359, 360; Rogers on Domestic Relations, section 268. As already intimated, if these presumptions should be changed by any future proceedings, this case, being in equity, may be reopened to the end that proper orders may be made in view of the change of circumstances and conditions.

It is contended generally that a conditional decree is fundamentally wrong and erroneous. This may be the rule as applied to judgments, but it does not apply to decrees in equity, which of necessity in many cases must be conditional in order to work out the equities of the parties. ·Leese v. Sherwood, 21 Cal. 151; Carlton v. Carey, 61 Minn. 318 (63 N. W. 611); Johnston v. Bowers, 69 N. J. Law, 544 (55 Atl. 230).

The second conditional part of the decree quoted is, as it seems to us, without authority. The trial court had no authority to penalize defendant for taking an appeal, and, after an appeal was taken, it had no authority to make any temporary or provisional orders made necessary by the appeal. Jurisdiction for this purpose was in this court alone. Shors v. Shors, 133 Iowa, 22.

No allowance for temporary support has been asked in this court; but counsel have filed a motion for suit money, or rather for the taxation of attorney's fees for plaintiff's attorney on this appeal. He has already been allowed $150 for this purpose, and we are satisfied that this is sufficient. True, the record is very voluminous, but it involves questions of fact with which the attorney was entirely familiar. No difficult question of law is involved, and, although counsel have well argued the case and been of great assistance in its determination, we feel that in view of the allowance of $350 in the trial court and $150 here, all of which has been or will now be paid, the recompense, in so far as it comes from defendant's estate, is fairly adequate and should not be changed. Moreover, no change in conditions is shown since the former order was made.

5. SAME: allowance of attorney's fees.

Appellant has also filed a motion to tax part of the printing to appellee because of an unusually extended amended abstract; and of an argument which redigests the testimony already digested in the abstracts. The amended abstract consists of one hundred and three pages, and the two arguments of

one hundred and eighty-four pages, and it is true that the original argument was in large part made up of repetitions of matter contained in the abstracts. To a certain extent this is commendable and helpful, but a repetition of practically all the testimony in all the abstracts is neither desirable nor helpful. Much of the amended abstract is made up of questions and answers taken from the transcript. This, too, is sometimes desirable, but, generally speaking, even in fact cases is neither desirable nor helpful. We are of opinion that the costs of printing one hundred pages of appellee's briefs and abstracts should be taxed to the appellee.

As intimated earlier in the opinion, plaintiff also appealed from the decree awarding alimony, claiming that it should be increased on this appeal. We are satisfied that she has no just ground of complaint thereof. On appellant's appeal the decree must be modified so as to strike out that part awarding the custody of Mark Doolittle to the plaintiff, and eliminating the provision for plaintiff's support and the support of her children pending the appeal to this court. In all other respects the decree will be affirmed. Appellant will pay all the costs save the printing of one hundred pages of appellee's printed matter, which, if not already paid, will be taxed to appellee. The case will be remanded for a modification of the decree in harmony with this opinion, and the decree should also provide for a retention of the case until the determination of the Jolly litigation, to the end that further orders may be made if it be found that change of conditions demand them.

*Modified* and *Affirmed*, and *Remanded* for a decree in the district court.

LADD, C. J., and GAYNOR and WITHROW, JJ., concur.